[PHILADELPHIA, 1839.]

## HARPER and Another *against* JEFFRIES and Another.

### IN ERROR.

On the 7th of February, 1818, A. conveyed to the defendants a lot of ground in the city of Philadelphia, in consideration of $5000, payable in ten bonds of $500 each in successive years, with interest payable half-yearly. The lot was at the time incumbered by a mortgage for $2470 to the Bank of Pennsylvania, which was not made known to the defendants at the time, though duly recorded. On the 9th of April, 1818, A. assigned the bond No. 1 to B., to whom the defendants paid the interest, and in 1821 they paid off the principal and interest. On the 11th of April, 1818, A. assigned the bond No. 2 to C. to whom the defendants paid the principal and interest in 1821. On the 16th of April, 1818, A. assigned the bond No. 3 to D. to whom the defendants paid interest, and in 1822 paid the principal. On the 13th of July, 1818, A. assigned the bond No. 7 to E., to whom the defendants paid the interest, and in 1822 the principal. On the 17th of August, 1818, the defendants paid A. six months interest on No. 10, and on the 18th of September, 1818, paid him the full amount of the principal. On the 17th of August, 1818, the defendants paid A. six months interest on No. 8, and on the 16th of September, 1818, A. assigned this bond to F., to whom the defendants paid interest. Afterwards F. assigned the same bond to C., to whom the defendants paid interest. On the 7th of November, 1818, A. executed to the defendants a mortgage on other property as an indemnity against the mortgage to the bank. This mortgage, however, proved worthless as an indemnity, the property having been previously incumbered beyond its value. Suit was brought on the mortgage to the bank in 1823 and judgment obtained, and in May, 1826, the premises were sold by virtue of an execution on this mortgage, clear of all incumbrances, for $2500. In an action brought by the executor of C., who was the assignee of the bond No. 8, it was held, 1. That the mere payment of interest on this and other bonds by the defendants, after they had been assigned, did not prevent them from setting up the facts as a defence against the payment of the bond; but 2nd, That the defendants having in their hands the means of paying off the mortgage to the bank, ought to have so applied the money due on the bonds, and could not therefore resist payment of the bond on this ground. 3d. That evidence was not admissible in this action to prove that the defendants had erected buildings on the lot.

THIS was a writ of error to the District Court for the City and County of Philadelphia.

James Harper and Thomas Harper, executors of the will of James Harper, deceased, brought an action of debt against George Jeffries and Robert Nuttle, on a bond given by the defendants to one John Warner, and assigned to the plaintiffs, dated the 7th of February, 1818, in the penal sum of $1000, with condition for the payment of $500 in eight years from the date, together with lawful interest payable half-yearly.

(Harper v. Jeffries.)

The defendants pleaded *nil debent*, with leave to give the special matters in evidence; and on this issue the cause came on for trial before PETTIT, President, on the 22d of May, 1837, when the following appeared to be the circumstances of the case.

On the 11th of November, 1816, John Warner being seized in fee of a certain lot of ground situate on the south side of Prune street, in the city of Philadelphia, demised the same to Jeffries & Nuttle, the defendants, for a term of eight years, at a rent of $375 per annum. On the 20th of the same month, he mortgaged the same premises to the Bank of Pennsylvania, to secure payment of a promissory note for $2470, and of all notes which should be given in renewal of the same ; which mortgage was duly recorded. on the same day. By indenture of bargain and sale, dated the 7th of February, 1818, John Warner, in consideration of $5000, conveyed the premises to Jeffries & Nuttle, the defendants, as tenants in common in fee with the usual covenant of special warranty. On the same day, the defendants executed ten bonds to Warner, each in the penal sum of $1000 with condition for the payment of $500 in successive years with interest; the first being payable at the expiration of one year from the date, and the last being payable at the expiration of ten years from the date. The fact of the premises having been mortgaged to the Bank of Pennsylvania, was not communicated to the defendants at the time of the execution of the deeds, but Warner swore on the trial that he mentioned the circumstance to them about two or three weeks afterwards : at which time he had not made any assignment of the bonds.

The bond first falling due, or No. 1, was assigned on the 9th of April, 1818, to Catherine Herman, to whom the defendants paid the interest as it became due. She assigned on the 20th of May, 1821, to George H. Burgin, to whom the defendants paid the principal and interest.

The bond No. 2, was assigned on the 11th of April, 1818, to James Harper, to whom the defendants paid the principal in full on the 18th of June, 1821, together with the interest then due.

No. 3 was assigned on the 16th of April, 1818, to Robert M'Mullin, to whom the defendants paid the interest, and on the 3d of January, 1822, paid the principal in full.

No. 7 was assigned on the 13th of July, 1818, to Isaac Herbert, to whom the defendants paid the principal in full, on the 22d of April, 1822, together with the interest.

On the 17th of August, 1818, the defendants paid Warner the interest then due on the *tenth* bond, and on the 18th of September, 1818, paid him the full amount of principal.

On the 7th of November, 1818, by indenture between Warner

(Harper *v.* Jeffries.)

and the defendants reciting the conveyance to the defendants, that it had been since discovered that "at the time of the said conveyance, a mortgage existed upon the premises to the amount of $2000 and upwards," in favour of the Bank of Pennsylvania; and that Warner was willing to indemnify the said Jeffries & Nuttle against any risk or liability in consequence of the said mortgage; Warner conveyed certain messuages and lots of ground in the township of Moyamensing, to Jeffries & Nuttle in fee, to indemnify them against the mortgage.

The premises so conveyed, were sold by the sheriff on the 18th or November, 1822, by virtue of certain executions, and produced less than the amount of the prior incumbrances.

The Bank of Pennsylvania brought suit on their mortgage, to June Term, 1823, and obtained judgment on the 19th of June. A levari facias was issued to September Term 1823, under which the sheriff sold the premises. This sale was however set aside. An *alias levari* was issued to September Term 1824, and a *pluries levari* to June Term 1826, under which the property was finally sold for $2500; a sum less than enough to satisfy the mortgage to the bank.

This action was brought on the *eighth* bond, in respect to which, the circumstances were as follows. On the 17th of August, 1818, according to an endorsement on the bond, the defendants paid six months interest due on the 7th of August, to John Warner. On the 16th of September, 1818, Warner assigned this bond to Robert M'Mullin. On the 1st of March, 1819, the defendants paid Robert M'Mullin six months interest, due on the 7th of February. On the 20th of June, 1819, Robert M'Mullin assigned this bond to James Harper, who died on the 5th of June, 1822. Judgment was entered by virtue of the warrant of attorney, on the 28th of September 1831, and an issue was afterwards directed to try if any thing was due, &c.

On the trial the plaintiffs gave in evidence the bond with the several endorsements thereon.

The defendants then proved the consideration of the bond to have been the conveyance by Warner of the lot of ground on Prune street, and gave in evidence the several bonds, the mortgage to the Bank of Pennsylvania, and the proceedings thereon to the sale by the sheriff. They then called a witness who proved that they erected a coachmakers' shop on the lot of ground purchased of Warner; the cost of which building was from $1300 to $1600. The testimony of this witness was objected to on the part of the plaintiffs, but admitted by the Court and excepted to.

The plaintiffs then called John Warner, who having been released, testified among other things, that about two or three weeks after the

(Harper *v.* Jeffries.)

sale, he told Mr. Nuttle, one of the defendants, of the mortgage to the Bank of Pennsylvania; that about two years after the date of the bonds, he offered to the defendants to give them four of the bonds which he still held, as security against this mortgage, which they declined.

The evidence on both sides being closed, the plaintiffs' counsel requested the judge to charge the jury—

" 1. That the payment of interest by the obligors was a waiver of all objections, arising from any incumbrance known by them to be existing at the time of the payment of the interest.

2. And this whether in point of fact they knew of the existence of any such incumbrance or suit.

3. That if the defendants had the means of indemnifying themselves after the knowledge of the existence of the incumbrance and did not do it, they cannot set up this objection against the present plaintiffs.

4. That the defendants as soon as they knew of the existence of the incumbrance and the assignment of the bond to a third person, were bound to stop and retain all moneys in their hands to apply them to the satisfaction of such incumbrance.

5. That the taking of the indemnity mortgage of the 7th of November, 1818, and continuing to pay the principal and interest of the bonds after that date, are a waiver of the right to object to the payment of the bond in question.

6. That if an obligor stand by and see the obligee assign to a third person his bond, and do not put him on his guard, he cannot set up in defence any incumbrance known by him to be in existence at the time of the assignment.

7. That an obligor may waive his right of defalcation or defence against the assignee of his bond as well by acts as declarations; that it is not necessary such acts or declarations should be done or made immediately before this assignment, nor that they should be done or said in the presence of the assignee, if communicated to him before the assignment."

The defendants' counsel requested the judge to charge the jury—

" 1st. That the plaintiff is in no better condition than Warner would be if he were plaintiff.

2nd. That Mr. Harper was bound to inquire of the defendants at the time he took the bond of M'Mullin.

3d. That the plaintiffs being assignees of an assignee don't give them any advantages over the first assignee or obligee.

4th. That the receipts on the bond were not sufficient to bar the defendants' defence."

The learned judge after stating the fact proceeded as follows:

(Harper *v.* Jeffries.)

"It is clearly settled in Pennsylvania, that the assignee of a bond takes it at his own peril, and that he stands in the same place as the obligee, so as to let in every defalcation, which the obligor had against the obligee at the time of the assignment or notice of the assignment. 1 *Dall.* 23, and a series of subsequent causes. 16 *Serg. & Rawle*, 18. The rule has been modified by subsequent decisions admitting certain exceptions with a view to defeat fraud in the obligor. It will be seen that the exception has probably never been allowed but to defeat fraud or unfairness in the obligor. In *M'Mullin* v. *Wenner*, (16 *Serg. & Rawle*, 21, 1827,) after stating the rule it was added, " yet the obligor may by his own conduct preclude himself from the benefit of that right. Thus when the assignee calls upon the obligor and informs him he is about to take an assignment of his bond, and the obligor acknowledges it is due, without any allegation of defence, he shall not be permitted to take defence against the assignee—and this whether his silence proceeds from ignorance or design." The ground is that the assignee has taken every pains to inform himself of the real situation of the parties. In *Frantz* v. *Brown*, ( 1 *Pa. Rep.* 261, May Term, 1830,) Chief Justice GIBSON says, " The assignee is bound to take notice of every thing, as well a secret trust, as want of consideration or set-off, which may affect the existence of the debt between the original parties, unless the obligor after inquiry made, has withheld the requisite information." He adds, " what would have been the answer to the proper inquiry here ?—Certainly not that the bonds were payable at all events, but that the obligee held them subject to an agreement to indemnify the obligor for whatever he should be compelled to pay for the obligee."

A former case of *Davis* v. *Barr*, (9 *Serg. & Rawle*, 197,) in which the doctrine was somewhat qualified—is evidently repudiated in *Frantz* v. *Brown*. In *Metgar* v. *Metgar*, (1 *Rawle*, 231, March Term, 1829,) the chief justice had said it is the duty of the assignee as established by many decisions, to *sound* the obligor before he parts with his money. The last reported case is in the same year with *Frantz* v. *Brown*, viz. *Houk* v. *Foley*, (2 *Pa. Rep.* 245,) in which Judge HUSTON, after stating the rule says, " the single exception is when before taking the paper the assignee calls upon the obligor and he tells him there is no defence, or when the obligor induces the assignee to take it." Thus the single exception seems to be when it becomes necessary to defeat fraud or unfairness. The cases of *M'Mullin* v. *Wenner* and *Frantz* v. *Brown*, were on bonds in the hands of assignees and are authorities. The other cases contain illustrations of the rule and the exceptions. Now to apply the principles. First, the plaintiff relies on the receipt of the 1st of March, 1819, for the interest due the 7th of February, 1819. If this be conclusive in law, it is my duty so to declare it, and a verdict for the plaintiff will follow of course. It has been urged

(Harper v. Jeffries.)

upon me as a matter of law, and I will meet it. I throw out of view for the present, the time between the date of the receipt and the date of the assignment to Harper, more than three months, also the circumstance that that receipt was signed by the son and not the father. The receipt, simply as such, was the act of Mr. M'Mullin, and might have been put on the bond when no money was paid, merely to give it currency. This is not intimated here, the contrary is proved—but in regard to the matter of law, this possibility must not be overlooked. The holder of a bond cannot give it additional currency by merely endorsing a receipt for interest. If an assignee be misled by that, he must blame no one but himself. So much for the general question; but suppose it appears on the face of the receipt that the obligor consented to it, and to its being put on the bond, then another question arises. I assume the fact to be so here —I assume the handwriting of the body of the receipt to be that of Mr. Nuttle, and as showing that the obligors knew of the receipt and of its being endorsed on the bond, and that the assignee had a right to presume that they knew it. This meets the question fully; would the obligors be forever concluded? My general answer is, they would not in all possible cases; and if the case rests upon any broad unbending rule of law, it is with the defendants on this point. But I say this, if at the time of paying interest and putting the receipt on the bond, the obligors knew that there was a full and complete defence then existing, free from all contingency or risk, their duty might be very different from what it would be, if at that time they only knew that there was an outstanding transaction which might or might not produce matter of defence as subsequent events should determine; and being satisfied that the risk would eventuate in favour of the holder of the bond, they paid interest in good faith upon it, with no intention to deceive or mislead the assignee or any one else, but showing a willingness to comply with their engagement and trusting honestly that the contingency would determine so that the payment of the bond would be right. For in this latter case I state it to be the law, that the obligors would not be estopped against any one, and that an assignee would take it at his own peril. What was the case here, when the obligors paid the interest to Mr. M'Mullin? Mr. Warner was a man of property as he believed, and as he says they knew. They had also the indemnifying mortgage of the 7th November, 1818. If the jury are satisfied that the obligors believed they would ultimately have to pay the bond, that they intended to deceive no one, to mislead no one;—then the mere payment of interest cannot under our act of assembly, and our decisions, conclusively commit them. To illustrate this, put the question of the chief justice in *Frantz* v. *Brown.* "What would have been the answer to the proper inquiry here? not that the bonds were payable at all events, but that the obligee held them subject to an agreement to indemnify the obligor for

(Harper *v.* Jeffries.)

whatever he should be compelled to pay for the obligee." As to the points presented in writing by the plaintiffs' .counsel, the first and second have been fully answered in what has been already said ; as to the third and fourth, I take the rule to be, if at any time before the receipt of the 1st of March, 1819, Jeffries & Nuttle knew that the contingency had happened on which their defence to the bond would rest, and that it had happened so as to give them a good defence to the bond, then they were certainly bound to retain all moneys in their hands to apply them to the satisfaction of the incumbrances. The fifth point is answered in the negative with the explanations already given. As to the sixth point, the plaintiffs counsel in the argument referred this point to the fact stated in the 5th point; the knowledge of the incumbrance, which the obligors obtained from the indemnifying mortgage. Now in this view of the point, as Mr. M'Mullin took the bond prior to the indemnifying mortgage, the principle if true, does not apply so far as relates to him, and the case of *Ludwich* v. *Croll,* (*2 Yeates,* 464,) as to matters occurring after an assignment of a bond, I take to be good law. As there is no evidence that the defendants knew of the transfer to Mr. Harper till just before the commencement of this suit, it has not been urged that the principle applies as to him. He certainly stands in no better a situation than Mr. M'Mullin did. With this explanation, and in connection with all I have before laid down, I state, that there is a rule of equity which is adopted as a part of our law, as follows; Where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent. *Niven* v. *Belknap,* (*2 Johns. Rep.* 589.) The application of the rule depends as before explained upon the aspect of the facts which shall be adopted by the jury. The plaintiffs' seventh point, is answered as put by the counsel : the law is so."

The judge then read the defendants' points and answered them according to the principles already laid down.

The jury found accordingly for the defendants; and the plaintiffs sued out this writ of error and filed the following exceptions.

" 1. Because the Court directed the jury that the payment of interest on the bond by the obligors, was not a waiver of objections, arising from a recorded incumbrance, known by them to exist at the time of such payment.

2. Because the Court refused to direct the jury, that the payment of interest was such a waiver, even if the obligors did not in point of fact, know of the said incumbrance ; having legal notice thereof by its record.

3. Because the Court refused to direct the jury that the defendants cannot set up against the plaintiffs the defence of an outstanding

judgment, if they had the means of indemnifying themselves after they had notice of the existence of the incumbrance, and refused to do it.

4. Because the Court refused to instruct the jury that as soon as the defendants knew of the existence of the incumbrance, and the assignment of the bond to a third person, they were bound to stop, and apply all the moneys in their hands to the payment of such incumbrances.

5. Because the Court refused to instruct the jury that the taking of the indemnity mortgage of the 7th November, 1838, and continuing to pay the principal and interest of the bonds after that date, were a waiver of the right to object to the payment of the bond in question.

6. Because the Court refused to apply to this case the rule of law, that if an obligor stand by when the obligee assigns to a third person his bond, and do not put him on his guard, he cannot set up in defence any incumbrance known by him to be in existence at the time of the assignment.

7. Because the Court instructed the jury, that after the obligees knew of the incumbrance, if they honestly trusted the contingency of the property being subsequently made liable or not to the said incumbrance, then they were not bound by the subsequent payment of interest, or to the payment of the other bonds to the original obligee and his other assigns.

8. Because the Court made the rights of the plaintiffs depend on the honesty of the defendants' belief that the vendor would be able to pay off the existing incumbrance; there being no means of ascertaining the honesty of such belief, and the fact, if ascertained, being entirely immaterial.

9. Because the incumbrance in question was only a defence *pro tanto*, to the payment of the bonds; and after the including all moneys paid by the obligors, and the amount of the incumbrance, there would still remain a balance due on the purchase-money.

10. Because the Court permitted the defendants to give evidence to the jury of the value of the improvements made by the defendants, after the purchase by them of the property in question."

Mr. *Randall,* for the plaintiffs in error, cited *Burleigh* v. *Stott,* (8 *Barn. & Cressw.* 29; S. C. 15 *Eng. Com. Law Rep.* 151.)    *Waters* v. *Tompkins,* 2 *Crompton, Mees. & Roscoe,* 726.) *Weyman* v. *Mohawk Ins. Co.* (13 *Wend.* 267.) 2 *Leigh's N. P.* 1265. *Elliott* v. *Callan,* (1 *Penn. Rep.* 24.)    *Frantz* v. *Brown,* (*Id.* 260.)    *Decker* v. *Eisenhauer,* (*Id.* 476.)    *Houk* v. *Foley,* (2 *Penn. Rep.* 250.)    *M'Mullin* v. *Wenner,* (16 *Serg. & Rawle,* 18.) *Niven* v. *Belknap,* (2 *Johns. Rep.*

573.) *Espy* v. *Witherow,* (7 *Watts,* 163) ; *Sugden on Vendors,* 530, 531. *Commonwealth* v. *Miller,* (8 *Serg. & Rawle,* 452.) *Lichtenthaler* v. *Thompson,* (13 *Serg. & Rawle,* 157.) *Law* v. *The East India Co.* (4 *Ves.* 833.)   *Capel.* v. *Butler,* (2 *Sim. & Stuart,* 457 ; S. C. 1 *Eng. Chan. Rep.* 543.) *Harper* v. *Conrad,* (12 *Serg. & Rawle,* 303.) *Donley* v. *Hays,* (17 *Serg. & Rawle,* 400.)   *United States* v. *Norvell,* (*Gilpin,* 106.) *Fuhrman* v. *Loudon,* (13 *Serg. & Rawle,* 386.) *Todd* v. *Gallagher,* (16 *Serg. & Rawle,* 263.)   *Withers* v. *Atkinson,* (1 *Watts,* 236.)   *Innis* v. *Campbell,* (1 *Rawle,* 373.)

Mr. *F. E. Brewster,* for the defendant in error.—The bond in this case was the one payable in eight years, and is called No. 8. It is dated February 17th, 1818, and was assigned by Warner to R. M'Mullin, September 16th, 1818; and by M'Mullin on the 20th June, 1819, it was assigned to James Harper, the plaintiffs' testator.   The defendants deny having paid any interest on the bond, and none is alleged to have been paid thereon after it was assigned to Harper.   Harper held it from 20th June, 1819, to June 5th, 1822, when he died.   The bond fell due February 7th, 1826, and remained in the hands of the plaintiffs without a demand for payment up to September 28th, 1831. It was held by the testator three years less fifteen days, and by him and the plaintiffs six years, eight months and six days before due, with the right to demand interest half-yearly.  It was held five years, seven months and twenty days after due.   The whole time it was held was twelve years, three months and eight days without moving the claim.   All this time the defendants were here, and able to pay.   The defendants derived the first knowledge of the bank mortgage on the 7th of November, 1818, when they took from Warner the indemnifying mortgage on seven houses, supposed to be ample security.   In this hope they remained till the 18th of November, 1822, when these houses were sold by the sheriff for less than the incumbrances on them.   From this time the defendants paid no one any thing, principal or interest, on any of the ten bonds.   The last payment they made was to Isaac Herbert of his bond No. 7, on the 22d of April, 1822.   Their previous payments, with the interest on the improvements they had made on the premises, amounted to forty-three hundred and eighty-five dollars.   An account current shows them to have suffered a dead loss, exclusive of interest, of twelve hundred and ninety-one dollars and twenty-five cents ; and with the interest on this balance up to the time of their last payment, a loss of one thousand six hundred and one dollars and fifteen cents.   It further shows, that upon an average interest account up to 1838, they suffer to the amount of two thousand five hundred and twenty-nine dollars and ninety-five cents; and by an interest account up to the same year, their loss is two thousand nine hundred and eighty-six dollars and thirty-three cents.

(Harper *v.* Jeffries.)

These accounts, (which were laid before the court by the defendants with their paper book) are strictly correct, and cannot be impugned. The defendants therefore contend, that from the time they discovered that Warner's indemnifying mortgage was a failure, they disclaimed the whole contract, and paid no more on account of their purchase: and also that at this time they were losers to the amount of twelve hundred and ninety-one dollars and twenty-five cents, allowing Warner an annual rent of three hundred and seventy-five dollars upon the premises as agreed for by the lease, and exclusive of all repairs and interest, and other moneys before then paid by them on account of the mortgage to the bank. The judge's charge shows, that all these points which were agreed to be questions of fact were made by the defendants, and argued to the jury; and that the jury passed upon them all as questions of fact, which was conclusive. There was no evidence that James Harper, Sr., ever communicated with the defendants in any manner about the bond in question. There was no evidence that the defendants ever paid any one any interest on this bond, except the evidence of Warner, who was admitted by the plaintiffs to be interested, and was by them released at the bar, and who testified that he thought the two receipts for interest on this bond were in Nuttle's handwriting— as to this he was not positive. His whole evidence was vague, equivocal, and from an interested source; viz., his avowal in the indemnity mortgage, "that the bank mortgage was not known to Jeffries & Nuttle at the time the said conveyance was made to them"—the truth of which he acknowledged on oath, and also the following written confession, likewise admitted by him on oath to be true.

"I do hereby certify, that at the time I sold and conveyed to Jeffries & Nuttle the lot on Prune street between Fifth and Sixth street, I did not inform them that it was subject to a mortgage to the Bank of Pennsylvania. I owned other real estate at the time, and was in tolerable good business; and I confidently believed that before the expiration of the times mentioned for payment of the purchase-money by Jeffries and Nuttle, I would be able to pay off the notes held by the Bank of Pennsylvania, the payment of which the mortgage was meant to secure.

(Signed)

October 3d, 1823.                                        John Warner."

The plaintiffs' whole cause was narrowed down to the alleged handwriting of Nuttle in these two receipts. This was not sworn to with certainty by Warner; but what he did say, together with the alleged comparisons of handwriting, was all left by the judge to the jury, who by their verdict thought proper not to sustain this mere question of fact; and there was no evidence that the defendants ever knew that the plaintiffs had their bond, much less that they stood by and saw old Mr. Harper take it without putting him on his guard.

The plaintiffs stand here therefore upon the naked ground of the assignee of an assignee acting upon his own judgment without any communication with the defendants, and without any evidence of any act done by the defendants in relation to this bond after it was made. The struggle by the plaintiffs has been now to glean up collateral facts, twenty years old, to obtain their interpretation upon the rejected oath of Warner, and to claim for them the absurd inducement to old Mr. Harper to buy this bond; whereas there is not a shadow of proof that he ever knew of any one of these denied allegations, or that he acted upon any inducement but the exercise of his own naked speculation. And certain it is, that this case is wholly barren of any evidence that he or the plaintiffs ever had any thing to do with the defendants upon this subject whatever, except that they bought the defendants' bond without their knowledge, which they held in darkness and silence for nearly thirteen years, and then entered judgment upon it without notice to the defendants.

1st. It is said that the plaintiffs are in Warner's shoes, and were so up to notice of the assignment. The plaintiffs deny this position. This is another effort to break in upon the established rule, that the assignee of a chose in action takes it subject to all the existing equities between the original parties. The vendor of a chose in action can only so sell his interest therein as to put his vendee in his place. " The only exception to this rule is as to negotiable paper, and as to such paper only until due and during the life of the drawer, after which it ranks as simple contract debts, in the course of administration." *Chitty on Bills*, page 1, ed. of 1830 ; *Rob. Dig.* 373 ; 3d and 4th Anne, ch. 9, A. D. 1704 ; *Pur. Dig.* 97, Act 28th May, 1715. This whole subject was discussed in 1776, and fully sustained as is now contended for by the defendants, in *Wheeler* v. *Hughes,* (1 *Dall.* 23;) recognised and repeated in 1786 in *M'Cullough* v. *Hanson,* (1 *Dall.* 464.) In 1799 it was again recognised, viz., " The assignee of a bond takes it at his own peril, subject to every defence which might be set up by the obligee." *Ludovic* v. *Croll,* (2 *Yeates,* 464.) And this rule applies up to the time of the assignment or notice of it. *McMullin* v. *Warner,* (16 *Serg. & Rawle,* 20.)

The first notice the defendants had of this assignment was the entry of the judgment by the plaintiffs upon this bond upon the 21st of September, 1831—nearly thirteen years after the assignment— since when it is not pretended that they have done aught but resist the claim.

2d. It is said that the plaintiffs were bound to inquire of the obligor, and have been guilty of laches by their long silence.

" One about to take an assignment of a bond is bound to inquire into every circumstance that may be set up against any part of the debt." *Frantz* v. *Brown,* (1 *Penn. Rep.* 257–262.) *Metzgar* v. *Metzgar,* (1 *Rawle Rep.* 231.) " It is his duty to sound the obligor as to the amount due." *Ib.* " The assignee is bound to take notice of

every thing, as well secret trusts as want of consideration, set-off, &c.," *Id.* " Unless he inquire of the obligor who withholds the facts, he takes at his peril." *Id.* " Every bond is liable to investigation as to its truth and fairness in the hands of the assignee. It depends upon the seal and the act of assembly. And the single exception is where before taking the paper the assignee calls on the obligor, and he tells him there is no defence, or when the obligor induces him to take it." *Houk* v. *Foley*, (2 *Penn. Rep.* 250.) By the thirteen years' silence, delay, and want of notice, the plaintiffs are estopped. " Where a man is silent when he should speak, the law will require him to remain silent when in conscience he should not speak." *Mervin* v. *Belknap*, (2 *John. Rep.* 589.)

3d. The assignee of an assignee is upon the same footing as the first assignee. *Frantz* v. *Brown*, (1 *Penn. Rep.* 260, 261 ;) 9 *Serg. & Rawle*, 137.

4th. A payment on account by the defendant does not affect his defence or work a waiver of his right to relief, if there be fraud or want of consideration. *Ludovic* v. *Croll*, (2 *Yeates*, 464.) This bond was drawn payable with interest half-yearly. All the other nine bonds were drawn payable in the same way. The interest therefore was a part of the original contract as much as the principal. And the payment of interest could have no other effect than a payment of a part of the principal. Suppose this bond had been payable by instalments every six months. Or suppose the whole purchase-money had been embraced in one bond payable by instalments every six months; and the defendants had paid one or more of the instalments; would their liability have been otherwise than by paying interest, which was a part of the original contract as much as the principal? There can be no distinction: the cases are analogous. If there be any difference, the payment of a part of the principal would be a stronger evidence of their waiver of defence than the payment of interest. And it is believed that no authority can be shown to sustain the position that the payment of interest upon a bond drawing interest has received any other construction than that placed upon the payment of a part of the principal. Finally, if chancery prevent the obligee from going on against the obligor while he is a loser, or in jeopardy, the verdict of a jury should produce the same effect. *Frantz* v. *Brown*, (1 *Penn. Rep.* 262.)

The opinion of the Court was delivered by

KENNEDY, J.—Each of the errors assigned in this case, may be considered as being embraced in one or other of the following questions, and either sustained or disaffirmed by the answers which shall be given to them. First; had the plaintiffs, from any thing that appeared in evidence, a right to claim of the jury to be placed

upon a more favourable footing than the obligee himself, had he been the plaintiff seeking to recover the amount of the bond in suit? Second; if the defendants, being the obligors in the bond, owed, at the time the land or house and lot were sold from them under the mortgage existing against it when they bought, a sufficient portion of the purchase-money, which they were to pay for the land, to have satisfied and extinguished the mortgage, so as to have prevented the land from being sold from them, and refused or neglected to apply such portion of the purchase-money owing by them to the discharge of the mortgage, can they set up the sale or loss of the land, as a defence to the payment of the bond? Third; was the evidence given by the defendants to show the value and the nature of the improvements made by them on the land after they purchased it, admissible?

As to the first question, it does not appear that there was even a spark or tittle of evidence given, which tended to establish any good reason why the defendants should not have the advantage of every equity against the plaintiffs, as the representatives of the assignee of the bond, that they would have been entitled to, had the suit been brought by the obligee himself for his own use. It was not shown, nor was any evidence given, tending to prove it, that the defendants were present making no objection to the assignment of the bond; or knew any thing whatever in regard to it until after it was made. It cannot, therefore, be said with any propriety, that they either expressly or tacitly induced or encouraged the assignee to purchase their bond as one that was good; and thus preclude themselves from showing that the consideration of it had failed, or been taken from them by reason of any delinquency or want of integrity on the part of the obligee. The interest on the bond was payable, by its terms, semi-annually, but the principal was not to become so until eight years after its execution; and the circumstance of the defendants having paid the first half-year's interest thereon to the obligee, before he assigned the bond, and the second half-year's interest afterwards to the first assignee, and the same being endorsed on the bond in the hand writing of one of the defendants, would, at most, only warrant the conclusion that the defendants, at that time, did not apprehend or suppose that they were likely to incur any loss by paying the interest, and therefore did not object to doing so; but it would be going too far, and would certainly be unreasonable to hold, that because they paid the interest on the bond at that time, under an apprehension that they would be safe in doing so, they should therefore be concluded forever afterwards from objecting to the payment of any future interest or principal when the times respectively at which they were made payable, had come around, and it was made to appear clearly that they could not have the benefit of this purchase. And although the mortgage of indemnity, as it is called, taken of Warner, the obligee

in the bond, on the 7th of November, 1818, had it been good and
sufficient to have indemnified the defendants against all injury or
loss that could have arisen from paying their bonds, or to have
enabled them to have paid off the mortgage of the Pennsylvania
Bank, they might have been, bound after taking it to have paid the
interest and principal· upon the bonds according to their tenor,
yet if they could have shown that it was worthless and good for
nothing, as it turned out to be, there would seem to be no good
reason why they should be deprived of any equity that they might
otherwise have been entitled to claim or to lay hold of in order to
protect them against the payment of the bonds.   It is incontrover-
tibly settled by our decisions on the subject, that, notwithstanding
the legal assignability of bonds given for the payment of money to
the obligee, *his order* or *assigns*, under our act of assembly, the
obligor is still entitled to avail himself of any legal or equitable
defence, in the hands of the assignee, which he had a right to claim
before the assignment, against the obligee himself.   If the assignee
does not wish to run any risk, on this account, in taking an assign-
ment of the bond, he ought, before he takes it, to call upon the
obligor, let him know that he is about to purchase and take an
assignment of it; and at the same time inquire of him whether he
has any objection to make against the payment of it.   By doing so,
he imposes the duty upon the obligor of either making known what-
ever objection the latter may think he has to paying the whole or
any part of the bond; or otherwise if he declines mentioning any,
he will be estopped from doing so after the assignment and will
thereby render himself liable to pay the amount of the bond to such
person upon his becoming the assignee thereof.   The law abhors
fraud and will not tolerate or sanction it in any form; but to permit
the obligor to set up a defence against the bond, in the hands of the
assignee, which he concealed when called on by the assignee to
make it known, would be a palpable fraud upon the latter; or to
permit the obligor, after being so called on, by the assignee, before
the latter purchased and took a transfer of the bond, to set up there-
after any defence which then existed, or might subsequently arise
out of the transaction, which produced the bond, though the obligor
knew or could know nothing of it, when so called on, would be to
throw the loss or injury upon the innocent assignee, and to relieve
the obligor therefrom, who may with propriety be said to have
caused it: because he knowing the nature of the transaction which
gave birth to the bond, must be taken to have known also whether
it was possible that such defence as he offers to make thereafter
would arise or not; and if it could, it may be said to have been his
duty to have made it known to the assignee: so that the rule of law
which declares that if one of two innocent persons must suffer a
loss, it shall fall upon the one who has been the occasion of it,
would seem to throw the loss in such case upon the obligor.   If

(Harper *v.* Jeffries.)

then the assignee, before becoming such, does not use the precaution of advising the obligor of his intention to take an assignment of the bond, he is to be considered as having taken it altogether at his own risk, and as subject to all equity, and every objection which the obligor may or could have set up against the obligee, had he not parted with it.   This doctrine is either established or plainly deducible from many cases.

The propriety of not taking an assignment of a bond, as here suggested, without the privity of the obligors, so that it may be known first, whether any thing is legally and equitably due upon it, and if so, what amount is due, has been mentioned by Mr. Sugdon in his treatise on the Law of Vendors, 2 vol. 221, as to taking assignment of mortgages; when he says, "that an assignment should not in any case be taken of a mortgage without the privity of the mortgagor, as to the sum really due; for although it undoubtedly is not necessary to give notice to the mortgagor that the mortgage has been assigned, yet the assignee takes subject to the account between the mortgagor and mortgagee, although no receipt be endorsed on the mortgage deed for any part of the mortgage money, which has been actually paid off."   The Court below seem to have entertained a correct notion of the law relative to all the matters growing out of the answer to this first question; and the exceptions arising thereout consequently are not sustained.

We come now to the second question, which embraces the answers of the Court to the third and fourth points submitted by the plaintiffs' counsel on the trial below; and the third, fourth and ninth errors assigned here.   The failure of the consideration, that is the loss of the land, for which the bond in suit was given, is relied on as a defence against the payment of it: this defence, it must be observed, is merely equitable, and to entitle the defendants to avail themselves of it, they ought to have shown that they had no means of preventing it, without being the losers or giving up that which of right belonged to themselves, for the purpose of satisfying the mortgage debt owing to the Pennsylvania Bank, which occasioned the sale and the loss of the land to them.   But in May, 1826, the time when the land was sold to pay this mortgage debt, then amounting to twenty-six hundred and twelve dollars thirty-six cents, beside interest thereon from the first of June, 1823, the defendants owed upon their bonds, outstanding and unpaid, twenty-five hundred dollars of the principal of the purchase-money of the land; two thousand dollars whereof, with a large amount of interest for many years back upon the whole of it, had become payable, making a sum more than sufficient to have satisfied the mortgage debt of the bank.   The money, thus owing by them upon their bonds, may with great propriety he considered as money in their hands belonging to the obligee, whose debt to the bank incumbered the land, which they might have applied, and would have been perfectly justified

(Harper *v.* Jeffries.)

therein, to the discharge of the bank debt, so as to have prevented the land from being sold on account of it. Had they done this, they would then have had and held the land discharged from all incumbrances, and would have been entitled to a credit upon their bonds equal to the amount so paid. And this would have protected them completely from all loss, either by means of the land being sold from them, or having had to pay money, which properly speaking, could have been regarded as paid out of their own pockets. If the amount of the money, owing by them at that time, was not sufficient to have paid off both the mortgage debt to the bank, and the amount of the bond in suit, they ought to have applied as much of it, as would have either discharged the one or the other; and then admitting that they had the right to elect to which it should be so appropriated, which seems to be conceding to them the most that they can ask in this respect, but not having applied it to the discharge of the bank debt, it is no more than fair to intend that they elected to pay it in discharge of their bonds, and have therefore precluded themselves from setting up the defence that was relied on at the trial of the cause. It is probable however, and indeed believed, that upon a strictly accurate calculation of the amount of principal and interest, actually payable upon the bonds at the time of the sale of the land for the bank debt, it will be found amply sufficient to have satisfied that debt, and likewise the bond in suit; which will still be making the case more clear against the defendants, though possibly not any stronger: because if it were sufficient to satisfy the first, they seem to be without any right founded upon either principles of law or equity to retain the money. This view of the case does not seem to have been met by any position or argument advanced on the trial of the cause below or on the argument here, excepting that it would seem to have been claimed for the defendants, that they, at the time the land was sold on account of the mortgage debt owing to the Pennsylvania Bank, had a right to rescind their contract for the purchase of the land, so far at least, as to give it up to be sold for the debt, and to claim to be released from the payment of any more of the purchase-money, than what they had previously thereto paid of it. This ground does not appear to have been repudiated by the Court below; but rather to have been submitted to the jury as tenable, in connection with the evidence of the value of the improvements made on the property by the defendants; which could only have been admitted with a view to make the impression upon the minds of the jury, that the defendants were great losers instead of gainers, by giving up the property and suffering it to be sold; and therefore it would not only be hard, but cruel as well as unjust, to require them to pay any portion of the residue of the purchase-money. This ground however is a mistaken one, and wholly untenable. If there was any time, after the contract for the purchase was carried into execution, when the defendants

Vol. v.—6

could, with any degree of plausibility, have claimed to be released from their purchase, it was when they were first told of the incumbrance in favour of the Pennsylvania Bank. But it is clear that the vendor might have removed all colour for such claim then, by an immediate discharge of the incumbrance : and even if he had declined to do this, the defendants could not have insisted upon a rescision of their purchase, without reconveying or offering to reconvey the property to their vendor, upon their being reimbursed by him any expenses necessarily incurred on account of the purchase. Instead however of claiming to have the purchase rescinded, or taking any step to bring about such an event, the defendants go on to ratify and confirm it to the fullest extent of their power, by taking security of the vendor to indemnify them against the incumbrance, and from time to time, as they were able, by paying the principal and interest upon some of their bonds, given to secure the payment of the purchase-money, and in the meantime holding on to and enjoying the property ; so that at no time did the defendants ever intimate by either word or deed that they had even the slightest wish, upon their part, to give up the purchase, before the sale of the property under the incumbrance in 1826. But then it was entirely too late and out of all time to attempt such a thing. The defendants had thus been in the full, free and uninterrupted enjoyment of the property, until they had become delinquent in paying a portion of the purchase-money more than sufficient to have met and paid off the incumbrance. This, as has been shown above, they might have done with perfect safety to themselves ; and considering it as the money of the vendor, it was inequitable in them to withhold it. If then they have sustained a damage or loss by suffering the property to be sold from them, they have no right to claim redress. It must be considered *damnum sine injuria ;* for the maxim of law in such case is, *volenti non fit injuria.* We therefore are of opinion, that the Court below erred in their direction to the jury, on the points involved in this second question.

We also think that the Court erred in admitting the evidence to which the third question has relation. It was wholly irrelevant to the issue. The amount of labour performed, or the amount of money expended by the defendants, in improving or altering the property, to answer their purposes, had nothing whatever to do with the matters in issue between the parties. It was not competent for the defendants, nor does it appear that they expressly pretended to assert a right, to claim compensation for the loss of the property by the sheriff's sale. We have shown above, that they had many years before that, put it out of their power to give up or annul the purchase, by affirming and confirming it immediately after they were first apprised of the incumbrance, which in fairness ought to have been disclosed to them by the vendor at the time of the sale, and before it was concluded : not only did the defendants ratify and

(Harper v. Jeffries.)

confirm the sale made to them of the property, after they were made acquainted with the incumbrance of the Pennsylvania Bank, and before they had paid a cent of the purchase-money, but ever afterwards held on to it, enjoying it as their own, and paying from time to time more or less of the purchase-money, as they found it convenient to do so : but still retaining a sufficiency of the purchase-money in their hands to have satisfied that incumbrance, they ought therewith to have discharged it, and by this means have prevented the loss occasioned, as they allege, by the sale of the property under it. This however they neglected or refused to do, and have consequently not only been the cause of the loss of the property to themselves, but likewise to the vendor and every other concerned ; and moreover, if the evidence was given for any substantial purpose, they would not only seem to insist upon being cut loose from their obligation and being permitted to retain the residue of the purchase-money, but also upon being reimbursed the money paid and laid out on account thereof, that they may be completely indemnified. But even if it were so, that they had a right to claim an indemnity for any loss they may have sustained by reason of the incumbrance of the Pennsylvania Bank not having been paid without a sale of the property for that purpose, still it is perfectly obvious that the estate of the plaintiffs' testator cannot be made liable for it; and hence again the total impertinency of the evidence admitted in opposition to the objection of the plaintiffs' counsel.

The judgment must be reversed, and a *venire de novo* awarded.

Judgment reversed and a *venire de novo* awarded.