WILLIAM C. DENTLER, Administrator of WILLIAM A. CARR, deceased, *v.* WILLIAM BROWN.

1. A vendee, who is to pay the purchase-money, as it falls due, in yearly gales, in discharge of liens, and who is under no present liability to pay so much of the purchase-money as may be necessary to discharge the encumbrances which threaten his vendor's title, is not bound to do more than offer in good faith to apply as much as is due by him, in part satisfaction of the liens.

2. If such vendee suffers the land to be sold by judicial process, with a clear conscience, and a stranger purchases, no blame is imputable to him—and the defence arising out of such a state of facts will go to the whole of the consideration; for one is not bound to pay for what he has not received.

WRIT of error to the Common Pleas of Lycoming.

This was an action of covenant, in which, in the court below, the administrator of Wm. A. Carr was plaintiff, and William Brown was defendant. It was brought to recover damages for the non-performance of articles of agreement between the parties, of the 8th September, 1842, containing these provisions:—

"The said William A. Carr doth hereby agree with the said William Brown, to sell to him one hundred and forty acres of the south end of the tract of land on which he now lives, and adjoining lands of Solomon Shopbell on the south, Samuel S. Banting and Jacob Marsh on the west, and Seth T. M'Cormick and Robert F. Foresman on the east, for the sum of two thousand five hundred and twenty dollars, or eighteen dollars per acre, to be paid as follows : six hundred dollars to be paid next spring, on the first day of May, the same to be paid on a mortgage standing against said property, and five hundred dollars a year after the first, to be paid yearly on the first day of May of each year, the payments to be paid on the mortgage, and a judgment of George Morrison & Co., and a book account held by said Brown against said Carr, and the remainder, if any, paid to the order of said Carr; and that the said Carr shall and will, on the first day of April next, give unto the said Brown possession of said premises; and as soon as said Brown shall get the remaining part of the tract still held by said Carr released from the mortgage standing against the same, the said Carr is to execute a proper conveyance for the conveying and assuring the fee-simple of the said premises to the said Brown, free from all encumbrances, which conveyance shall contair a general

warrantee and the usual full covenants. And it is understood that the stipulations aforesaid are to bind the heirs, executors, and administrators of the respective parties."

The mortgage referred to in the foregoing paper, was one to Margaret Shippen, dated 29th March, 1839, to secure the payment of $1,829, in two equal sums, respectively on 1st April 1840 and 1841.

The judgment of Morrison & Co. was for $56.29, and Brown's own book account was for $176.67.

" The object of Carr in selling the one hundred and forty acres, appears to have been, to save the residue of his land; but as the instalments due from time to time by Brown to Carr, according to the terms of their agreement, were not sufficient, if regularly paid as they became due, to satisfy the mortgage for some years after a *scire facias* could issue thereon, and the property be sold on the mortgage, it became important to obtain the consent of Margaret Shippen, the mortgagee, to receive the instalments due by Brown to Carr, and not to proceed on her mortgage, if the instalments were regularly paid. Carr went down to Pottsville, to see her agent, but he could not obtain a stay of proceedings, and returned home without being able to do so; and according to the testimony of Mr. Derr, Carr said on his return, that the whole matter between him and Brown was at an end, and he could do nothing towards paying the demands that Derr had against him. Mr. Joseph G. Shippen, the agent of Margaret Shippen, testifies that shortly after the first instalment of $600 was due from Brown to Carr, Brown offered to pay that sum on the mortgage, but that he, as the agent, would not receive it, nor would he have received it if it had been offered on the very day it ought to have been paid. Accordingly, to December Term, 1843, a *sci. fa.* was issued on the mortgage, and judgment obtained on the 5th of February, 1844, for $2,361.22, and on the 1st day of May, 1844, the whole tract was sold by a *levari facias*, for the sum of $1,845, to James Armstrong, Esq., attorney for Margaret Shippen."

Any other facts in the case are fully stated in the opinion of Mr. Justice BELL.

The verdict was for the defendant. Upon bringing the case into this court, a number of errors were assigned, which are so disposed of as to render their insertion here unnecessary.

*Youngman*, for the plaintiff in error.—The defendant being, or having the power of putting himself, in possession, had the means

of payment in his own hands, of the only encumbrance that brought his title in danger, and was bound to discharge the same, and deduct it from the purchase-money: Renshaw *v.* Gans, 7 Barr, 120; Harper *v.* Jefferies, 5 Wharton, 40; M'Ginnis *v.* Noble, 7 W. & S. 454. If the principal consideration with Carr, in entering into the contract, was to have the liens removed, and Brown so understood it, the sale on the Shippen mortgage cannot avail as a defence in this suit: Campbell *v.* Shrum, 3 W. 60. The defendant had notice of the amount due on that mortgage, and the enforced payment of it is not now a sufficient answer to plaintiff: 3 W. 60; Magaw *v.* Lothrop, 4 W. & S. 316. The defendant should have applied to the court for an order on sheriff to sell Carr's portion of the land before selling that sold to Brown: 9 Johns. R. 127; Mevey's Appeal, 4 Barr, 80; 2 W. 256.

*Armstrong,* for defendant in error, contended that the agreement was rescinded by the parties, and that the plaintiff never complied with his part of the contract. He cited Youst *v.* Martin, 3 S. & R. 423; 4 W. & S. 316; Moore *v.* Shelley, 2 W. 256; Ballard *v.* Walker, 3 Johns. Cases, 60; Love *v.* Jones, 4 W. 465; Huber *v.* Burke, 11 S. & R. 238.

The opinion of this court was delivered by

BELL, J.—It is not to be disputed that the principal consideration of the proposed conveyance from Carr to Brown was the covenant of the latter to apply the several instalments of purchase-money as they respectively fell due, in discharge and satisfaction of the mortgage executed by Carr to Margaret Shippen, of the judgment recovered by Morrison & Co., and of the book account held by Brown against Carr. But it is also apparent that, at the time of the execution of the article of agreement of September 1842, both parties contemplated the mortgagee would be willing to await payment of her mortgage by successive gales, at the times fixed for the several payments to be made by Brown. The article itself furnishes indubitable evidence of this; but were it doubtful in this particular, all hesitancy is put an end to by the testimony of Samuel Derr, showing the construction put upon this instrument by the parties themselves. He swears, that in 1843, Carr told him of an intended visit to Pottsville, with a view to make some arrangement with Dr. Shippen, the agent of Mrs. Shippen, for the payment of the mortgage, with the proceeds of the land sold to Brown, and that after Carr's return, he informed the witness he had failed of

his errand; that he could get no arrangement made, and, consequently, "the whole matter between him and Brown was at an end." An attempt made by Brown himself, to induce .Dr. Shippen to accept the instalments, as they fell due under his agreement, in payment of the mortgage, met with no better success. The agent utterly refused to accede to the terms of that agreement, and shortly afterwards caused proceedings to be instituted upon the mortgage, under which the mortgaged premises were finally sold to a stranger.

It appears also, that in discharge of his undertaking, Brown actually paid off the judgment due to Morrison & Co., and took an assignment of the judgment to himself. This assignment, is, however, of no value, for it is conceded the estate of Carr is insolvent. In addition to the loss thus incurred, the effect of this action is to make him answer in damages for non-payment of the purchase-money of an estate which he never got, and this on the ground that he has been guilty of such negligence as in equity makes him liable thus to answer. But this notion is founded in an entire misrepresentation of the cases cited on the argument by the plaintiff in error. Had a conveyance been made to Brown, and possession delivered in pursuance of it, and the purchase-money due at the time of the sale, the case might, possibly, have been brought within the equitable principle recognised in Harper *v.* Jefferies, 5 Wh. 26, and Renshaw *v.* Gans, 7 Barr, 117. But neither of these supposed facts form a feature of the case. On the contrary, no conveyance was made by Carr, and, so far as appears, no possession was delivered to or taken by Brown. To prove such a possession, the declarations of John Passel, who appears to have occupied the southern end of the tract, were offered to prove that he was Brown's tenant, and properly rejected. No connexion whatever was shown to have existed between Brown and Passel. Why, then, should his declarations be received to affect Brown, who, for aught that appears, was a total stranger to him? Besides, there was no reason shown why Passel himself was not produced. But had such a possession been shown, it would not have helped the plaintiff, for the very cogent reason that the other important element necessary to success was wanting: namely, the present liability of Brown to pay so much of the purchase-money as was sufficient to discharge the encumbrance which threatened Carr's title. He offered, in good faith, to apply so much as was then due, in part satisfaction of the mortgage, in order to stay the hand of the mortgagee. But this was refused. Was he bound to do more, in order to fulfil his covenant? Were authority required to show that he was not, it

is furnished by the undoubted doctrine recognised in M'Ginnes *v.* Noble, 7 W. & S. 454. It is there agreed that a vendee, even after conveyance, is in no default for suffering a sale of the land under a prior encumbrance entered against the vendor, where the purchase-money is not due at the time; for, say the court, "he was not *bound* to pay the encumbrances, as he had nothing in hand to pay them with." He may, therefore, under such circumstances, "suffer the land to be sold with a clear conscience, and if, at the sale by a judicial process, a stranger purchase, no blame will be imputable to him; the defence will go to the whole of the consideration, for a man is not bound to pay for what he has not received." I have extracted this much of the opinion delivered in the case last cited, rather to show the point has before passed in review in this court, than to call in the aid of authority for so plain a proposition. Had, indeed, Brown purchased the property at the sheriff's sale, for less than he agreed to pay Carr for it, possibly a different set of principles might have been found operative. But as it is, there is no pretence for saying he was compellable to do more than he professed to do, by tendering the first instalment of the sum he had covenanted to pay for the land, to the mortgagee. He undertook to do no more. The effort here is to compel him to go beyond this; and, therefore, it is an effort not in pursuance of the contract, but in direct contravention of it.

The idea suggested in the first proposition submitted by the plaintiff, that it was the duty of the defendant, when he ascertained his portion of the land was about to be sold under the mortgage, to call on the court for a direction to the sheriff, first to sell the purpart retained by Carr, is somewhat unique. It is certainly not deducible from the cases cited in support of it. Any application of the sort, instead of being in furtherance of the agreement of the parties, would have been in direct hostility to it, since the primary object was to save Carr's portion from the grasp of the mortgagee. With what face, then, could Brown have called for a sale of that portion, in order to save the part of which he had agreed to take a conveyance? The truth is, the refusal of the mortgagee to fall in with the view of the contracting parties, disjointed their whole scheme, and caused its failure, without any blame in either. So Carr himself regarded it, and this very naturally caused his declaration to Derr, to which I have already alluded.

The views expressed cover the whole case, and show that the instructions given by the court below were correctly founded.

It is scarcely necessary to say there is nothing in the exception taken to the admission of Dr. Shippen's testimony. Indeed, it has not been urged.

Judgment affirmed.