JONATHAN GARRARD *v.* LOT LANTZ, for use of LEVI ANDERSON and Others.

1. A sheriff's sale, effected under a judgment or other encumbrance older than an equitable sale, sweeps away the whole estate; and the equitable vendee must purchase of the sheriff, or lose all the interest acquired under his equitable title; but where the sheriff's sale is effected under a younger judgment, it affects only the interest remaining in the vendor, and the equitable vendee may purchase of the sheriff or not, as his interest remains untouched.

2. If, at such sale on a younger judgment, the equitable purchaser acquires the interest remaining in his vendor, he does not thereby extinguish the right of that vendor to recover from him the balance of purchase-money beyond what may have been paid to that vendor, and to the sheriff. The equitable purchaser, so buying at the sheriff's sale, is deemed a trustee for his vendor of a beneficial interest in the land, to the extent of the unpaid purchase-money.

3. The remedy of the vendor to recover the unpaid purchase-money, in such case, is by covenant on the articles, and not, it seems, by ejectment.

ERROR to the Common Pleas of Greene.

*Nov.* 1. This was an action of covenant brought by Lot Lantz, for the use of Levi Anderson and others, against Jonathan Garrard.

It appeared that on 10th January, 1839, Lantz and Garrard

entered into articles of agreement, by which for $7500 Lantz agreed to make to Garrard, on 1st August, 1840, a deed of general warranty for certain lands, described in the articles as containing 300 acres. Of this purchase-money, $2000 were to be paid on the 1st April, and $1000 on the 1st October ensuing, and the balance in equal annual payments of $1000 each, except the last, which was to be a payment of $500. Of these Garrard paid the two first, and $100 to extinguish an outstanding paramount title, making in all $3100.

On 17th December, 1839, Lantz gave a single bill, with warrant, to Black and Myers for $2600, on which judgment was entered, and such proceedings had that the property sold to Garrard was levied and sold by the sheriff. At the sheriff's sale Garrard became the purchaser for $3100, and the sheriff's deed to him for the property was acknowledged 17th March, 1841.

Other judgments were entered against Lantz: one, in favour of B. F. Black, on the same day with that of Black and Myers, for $3000, and another, in favour of J. R. Lantz, for $1500, entered shortly before those named.

Lantz left the county insolvent, and was away six or seven years. After his return, on 1st February, 1848, Lantz tendered a deed to Garrard for the land mentioned in the articles, and a few days after brought this suit to recover the balance of purchase-money, which he alleged was due to him from Garrard.

The defendant requested the Court to charge the jury,

1. That a judicial sale of the legal title of the vendor of land, sold by articles of agreement, divests the title of the vendor and extinguishes the covenants in the article, when the vendee is the purchaser at such sale, if the sale be made before the delivery of a deed.

2. That the sale, in this case, divested the interest of Lantz in the articles of agreement and vested the same in the purchaser, at the sale made by the direction and procurement of Lantz, and the articles of agreement were merged in the deed made by the sheriff to Garrard.

4. That there are two distinct interests in land sold by articles of agreement; the title or interest of the vendor being legal title; and the interest of the vendee being to the extent of purchase-money paid; and that a judicial sale of the interest of either divests the title of the party whose interest is sold, and vests the

same in the purchaser, even if said purchaser be the vendor or vendee in the articles, as the case may be.

5. That when a vendor in articles of agreement in failing circumstances confesses a judgment to trustees or assignees for the payment of debts, and directs a sale to be made to raise money in advance of the deferred payments in the articles, and a sale is made in pursuance thereof, it is an extinguishment of the covenants, if the vendee in the articles is the purchaser, even though such sale be a judicial one.

6. That there is a distinction between a case where a *vendee, who has received his deed and given bonds for the payment of the purchase-money before they become due, suffers the land to be sold by the sheriff for the payment of encumbrances which existed before he purchased and becomes the purchaser,* and the case where the interest of a vendor is sold on a judgment confessed or obtained *after* the sale by articles and prior to the delivery of a deed in pursuance thereof, especially where such sale was made by the *direction* and *procurement* of the vendor. In the former case the defence would be simply equitable; in the latter, it would be a legal defence, the sale having passed the entire interest of the vendor.

7. That Lantz, the vendor, had a right to sell or cause to be sold his whole interest in the land, or unpaid purchase-money, and if the jury believe that he *intended* the sale thereof to be an out and out sale, or a sale of his whole interest (and that is a question exclusively for the jury), the plaintiff cannot recover.

The Court below (GILMORE, President) charged the jury thus:

"This action of covenant is instituted to recover of the defendant the remainder of the purchase-money due on the articles of agreement, after deducting the sums which defendant paid to Lantz, and to the sheriff, in all $6100, and the defendant resists the recovery, mainly on the ground that he has purchased the entire interest of Lantz, the vendor, at the sheriff's sale. On the part of the plaintiff, it is contended that Garrard, being the purchaser, is only entitled to a credit for what he has actually paid, and that the remainder of the purchase-money is recoverable in this action.

"We instruct you that the defendant, notwithstanding his purchase of the title or interest of the vendor, is liable for the remainder of the purchase-money, due on the articles of agreement, allowing him interest on the sum which he has paid in advance of the instalments. It is true, that all the authorities which have been cited by the plaintiff, commencing with 16 S. & R. 261, are instances where

the lien had attached against the estate of the vendor, before any articles of agreement, but we cannot see why a vendee there would only be entitled to defalk the amount of his bid, with interest, and such expenses as a jury would allow him, and, in the case of a sale under a subsequent lien, would be entitled (if he became the purchaser) to the entire estate. In the case of a prior encumbrance, he is forced to become the purchaser, although he may have no money in his hands, or lose the estate. Not so as regards a subsequent lien—he is a volunteer—he buys on speculation, and if he buys the property for less than he had bound himself to pay under the articles, he is a gainer to that amount. If a stranger purchase it, it is admitted that the vendee would be bound to pay the balance of the purchase-money; yet if the vendee becomes a purchaser, for a dollar more than the stranger bid, he is released from the payment of the remainder of the purchase-money. This doctrine, to be sure, would make it indifferent to the vendor whether a stranger or his vendee should become the purchaser; in either case he would lose all beyond the bid. But what is sold by the sheriff? The legal estate remaining in the vendor, subject to the equity of the vendee, who is to have a conveyance of the legal estate, upon payment of the purchase-money. Now, can the vendee insist upon the conveyance, by a partial compliance with his agreement? If a stranger had purchased and stood in the place of the original vendor, he could not treat him so; and will the mere fact, that he has become the purchaser himself, enable him to avoid his own agreement? We may again observe that the vendee, in becoming the purchaser, is a mere volunteer; his covenants with Lantz could not have been disturbed, he could not have been compelled to pay an hour sooner or a cent more; besides, this doctrine would destroy all reciprocity, because we hold it for certain, that the vendor, by the sale, was not released from his covenants with the vendee. If this were the case, vendees would be in a most unfortunate predicament. Take this case for an instance:—Suppose the defendant had paid $7000 of the purchase-money, and Lantz had then discovered he could not make such a title as he had covenanted to make, could he relieve himself by confessing a judgment to any one and procuring his estate to be sold? Certainly not. Then, while Lantz is held to his covenants, for both quiet possession and quantity, Garrard is released, or rather has released himself, from the payment of a considerable portion of the purchase-money. But, it is asked here, supposing Lantz had taken the arti-

cles of agreement or bond representing the instalments, and went into market with them, and Garrard had become the purchaser, for a sum not greater than was bid by him at the sheriff's sale, would not Garrard have acquired the entire interest, and could he have been compelled to pay? We answer that he could not, for the reason that this would be the agreement of the vendor, to receive that amount as payment of the whole.

"It is said that the conditions, trusts, and powers, set forth in the confession of the judgment, upon which this property was sold, go to this extent, manifest an intention, and convey a notification to all who might purchase—vendee or stranger—that the whole and entire interest of the vendor was to be sold, and that Garrard, however he might be placed, purchasing under a simple unconditional payment, purchased in this instance, with the understanding that he was buying the whole residue of the articles.

"If there had been an agreement between Lantz and Garrard, that, if the latter would purchase, he would be released from the payment of any purchase-money, beyond his bid, this would be the case, *but there is no evidence of this that the Court can perceive.* The mere fact that Myers was present at the sale and bid, will not answer. There is no evidence that Garrard himself offered any bid in his presence. Lantz contemplated two modes of disposing of his property for the benefit of his creditors—he confessed a judgment to Black and Myers, as trustees, for their own use and others. He, at the same time and in the same instrument, authorized them to sell, at public, private, or sheriff's sale, and to pursue either course or both, as it might appear to them the most advantageous. Now, if it happened, as it did here, that the trustees should think proper to resort to a judicial sale, is there anything in the writing authorizing the confession of judgment, which would place Garrard, as purchaser, in a different situation, than if this had been purchased on any other simple judgment? We answer that there is not. If Garrard had purchased at private sale, his purchase, then, would have depended upon its terms.

"The first and second points may be answered together. We have already said that the articles of agreement are not extinguished by the sheriff's sale, and we have shown that, if such was the case, a vendor might, at any time, place his vendee in a very unfortunate condition, by procuring a judicial sale of his estate, and thereby release himself from his covenants.

"4. This is true, and, although not at common law, in Pennsyl-

vania any estate or interest in land may be sold; but when the
estate of a vendor is sold, whether upon a judgment entered before
or after the relation of vendor and vendee is formed, and the vendee
becomes the purchaser, he is only entitled to a credit on his agree-
ment for the amount actually paid and such interest and expenses
as the case may warrant.

" 5. We do not answer that a sale effected, under the circum-
stances detailed in this point, would alter the case, or effect of the
sale.

" 6. We have already answered this in our general charge.

" 7. In order to give a sale, made by a sheriff, under a judicial
process, an effect beyond the law, a mere intent of the party will
not be sufficient—it must be openly expressed and acted upon.   We
have said already that it was the intention of Lantz to effect either
a private or judicial sale, and, the probability is, he contemplated
an entire disposition of his whole interest; but there is certainly no
evidence that he intended a relinquishment of any legal or equitable
advantage."

Verdict and judgment in favour of the plaintiff for $1620.   The
following errors were assigned:

1. The first sentence of the fourth paragraph, beginning—" If
there had been, &c."

2. Charging that plaintiff below was entitled to recover.

3. The answers to the points submitted by the defendant below.

*Loomis, Howell*, and *Watson*, for the plaintiff in error.—A judi-
cial sale of the legal title of the vendor of land, sold by articles,
divests his title and extinguishes the covenant in the articles when
the vendee is the purchaser, if the sale was made before delivery
of the deed from the vendor.   The sale here divested Lantz of his
interest in the articles and vested it in Garrard: the articles were
merged in the sheriff's deed to Garrard.   Lantz was not entitled to
recover: McMullen *v.* Wenner, 16 S. & R. 20; Chahoon *v.* Hol-
lenback, Ib. 431; Purviance *v.* Lemmon, Ib. 294; Chew's Execu-
tor *v.* Matthew's Administrator, 1 Pa. Rep. 474; Day *v.* Lowrie,
5 Watts, 417.

*Ewing*, contrà, relied upon Todd *v.* Gallagher, 16 S. & R. 261;
McCarty *v.* Springer, 3 Pa. Rep. 157; Harper *v.* Jefferies, 5 Whar-
ton, 26; McGinnis *v.* Noble, 7 W. & S. 454; Ganz *v.* Renshaw, 7
Barr, 119; Dentler *v.* Brown, 1 Jones, 295.

The opinion of this Court was delivered by

BELL, J.—We think it is impossible to distinguish this from the similar cases that have preceded it, by any course of sound reasoning. Like the defences set up in Todd v. Gallagher, 16 S. & R. 261, Harper v. Jefferies, 5 Wh. 26, McGinnis v. Noble, 7 W. & S. 454, Ganz v. Renshaw, 7 Barr, 119, and Dentler v. Brown, 1 Jones, 295, that assumed here is purely equitable, and, resting on considerations of honesty and fair dealing, measures the relief to which the vendee is entitled by the expenditure to which he has been subjected as a consequence of the proceedings had under the judgments recovered against his vendor, the plaintiff below. As was well said in McGinniss v. Noble, "all the vendee has a right to require, is to be placed in the same situation he would be in had he paid the encumbrances without suit, and in that case the measure of equitable relief would be precisely the money paid, and the necessary expenses, and *no more*." And again, "even-handed justice requires that while on the one hand he is not suffered to lose, on the other he shall not be allowed to gain anything by the sale." In that case, too, like the present, there was not, at the time of the sheriff's sale, a sufficient sum of purchase-money due, in the hands of the vendee, to satisfy the lien by virtue of which the land was brought to the hammer; and the same fact characterized Todd v. Gallagher, where HOUSTON, Justice, remarked, speaking of the vendee, "Justice required that he should have credit for what the encumbrance cost him, and the same justice requires that he should have credit for no more than what it cost him." In Harper v. Jefferies, this equitable principle was carried still farther, for it was there made operative against a vendee whose estate had been sold to a stranger, under an execution against the vendor, because it appeared the former was indebted in an amount of purchase-money competent to the satisfaction of at least the judgment-creditor, who pressed the land to a judicial sale. The vendees insisted that having lost the land by reason of a paramount encumbrance, there was a total failure of consideration. But Mr. Justice KENNEDY, repeating the doctrine which has now become familiar, answered: "This defence is merely equitable, and, to entitle the defendants to avail themselves of it, they ought to have shown that they had no means of preventing it without being losers, or giving up that which of right belonged to themselves." These adjudications, and the more recent one of Dentler v. Brown, establish the distinction that where the vendee himself becomes the purchaser at the judicial sale,

he remains liable to the vendor for the residue of the purchase-money unpaid; but if the land be sold to a stranger, this liability depends on the inquiry whether, at the period of the last sale, the vendee had in his hands, of the consideration of his purchase, a sum, sufficient to extinguish the encumbrance.

Acknowledging the authority of these precedents as having definitively settled the law in Pennsylvania, the plaintiff in error, on the argument, sought to draw a distinction between them and his case, from the fact that in the three older determinations there was a conveyance of the legal title, subject to the encumbrance which afterwards caused the sales under execution, while here the legal estate remained in the vendor, and the judgments were recovered against him, after the sale to the vendee. Regarding, as we are compelled to, the defence as a purely equitable one, it is difficult to conceive why the suggested differences should interfere to prevent an application of the equitable doctrine deducible from the authorities adverted to. It is true, that a judgment recovered against a vendor, after he has articled for a sale of his land, binds but his legal title and such beneficial interest as may remain in him, measured by the amount of the unpaid purchase-money; while a judgment rendered against him before the sale, covers the whole estate: McMullen v. Wenner, 16 S. & R. 21; Chahoon v. Hollenback, Ibid. 431. But why should this difference in the binding efficacy of the lien work a difference in the equities that appertain to the relation of vendor and vendee, in this State? If an argument could be derived from it, it would rather tend to favour the continued liability of the vendee than to the establishment of an opposite rule; and for this reason: A sheriff's sale, effected under a judgment or other encumbrance, older than the equitable sale, sweeps away the whole estate; and the equitable vendee is thus compelled to become the purchaser, under the penalty of otherwise losing all the beneficial interest acquired by his purchase; but where the forced sale is brought about by means of a judgment posterior in time to the equitable purchase, it is optional with the vendee to buy from the sheriff, since his sale affects only the interest remaining in the vendor, leaving that of the vendee untouched. There would, therefore, seem to be greater reason for releasing a purchaser from his covenants under the first supposed circumstances, than under the latter; and yet we have seen that, as a buyer under compulsion, he is still held to the performance of his original contract. Why should he not be, when he interferes as a volunteer

buyer from the law's officer? Again, if a third person buy at the judicial sale under a subsequent judgment, it is conceded the first purchaser would be amenable to him to the extent of the unpaid purchase-money. Why should the former be permitted to free himself of this obligation by becoming himself the purchaser under the judgment, and thus acquire the whole estate, legal and equitable, at a cost below what he agreed to pay for it, at the expense of the vendor? Certainly, there is no reason to be found for an affirmative answer to this question, among the considerations which would influence the action of a chancellor; and our cases of Ganz v. Renshaw, and Dentler v. Brown, prove that under our system, the fact, that the judgment against the vendor was recovered after his sale, works no difference in the liability of a vendee who also becomes a buyer from the sheriff. But it is insisted that, as such a judgment encumbers the legal estate retained by the vendor, as well as his beneficial interest, a transfer of these to his vendee necessarily extinguishes, by merger, the whole estate of the former, and, with it, his right to call for the remainder of the purchase-money. This idea is founded on the decision in Purviance v. Lemmon, 16 S. & R. 292, and the kindred cases cited, and is not without plausibility. But a critical examination of the doctrine announced by these cases, will show that it is founded in the legal conclusion that where a vendor re-acquires the beneficial interest, before residing in his vendee, by purchase at a judicial sale, mediately or immediately, the contract is to be regarded as executed between them, for had each performed every duty cast upon him by his contract, the parties would have stood in the same position; the vendee having the benefit of the whole sum paid by him as purchase-money, and the vendor having repurchased that portion of the estate, which was out of him. As, therefore, there is no intervening equity to prevent it, the contract is treated as extinguished at law, because executed so far as it is possible. Thus considered, it is obvious the rule established by these determinations is inapplicable here. Conscience and good faith require at the hands of this vendee, something more than he has yet done, and though the whole estate is united in him by operation of law, equity still keeps his covenants afoot as a subsisting engagement. The truth is, that, as the vendor is regarded as trustee of the legal title for the benefit of the vendee, the latter is also esteemed as trustee of a beneficial interest in the land to the extent of the unpaid purchase-money; and though, perhaps, because of the

sheriff's conveyance, the vendor could not enforce payment by ejectment to recover possession, there is no technical difficulty barring an action on the covenants. He cannot keep the land and money both. An opposite rule would be intolerable. It frequently happens that sales of land are made to relieve the owners from impending embarrassments. This would seem, from the conditions accompanying the judgments confessed by our vendor, to have been the object in this instance. To permit a vendee under such circumstances to lie by and seize the opportunity of a sheriff's sale to acquire the estate in defeat of his covenants, would be to encourage fraudulent delays, and no doubt frequently lead to their perpetration.

As we think this controversy falls within the doctrine settled by the cases I have cited, the case is with the plaintiff below, both on reason and authority.

Judgment affirmed.